J-S25019-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SHANE LYNN BUHRMAN | : | |
| | : | |
| Appellant | : | No. 1997 MDA 2017 |

Appeal from the Judgment of Sentence December 22, 2017
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0008254-2016

BEFORE:  STABILE, J., MURRAY, J., and MUSMANNO, J.

MEMORANDUM BY MURRAY, J.:                    **FILED JUNE 11, 2019**

Shane Lynn Buhrman (Appellant) appeals from the judgment of sentence imposed after a jury found him guilty of possession with intent to deliver (PWID) marijuana.[1]  Appellant argues that the trial court erred in allowing certain police officer testimony at trial.  Upon review, we affirm.

Appellant was charged with one count of PWID following a controlled drug buy with a confidential informant (CI).  The case proceeded to a jury trial on November 13, 2017, at which the Commonwealth presented undisputed evidence that on August 2, 2016, Northern York County Regional Police Officer Patrick Gartrell prepared the CI for the controlled drug buy by searching the CI and providing him with $150.  The officer transported the CI to a single-

_____

[1] 35 P.S. § 780-113(a)(30).

family residence. The CI exited the car and "walked to the north side of the residence[ ] and around the corner," at which point Officer Gartrell lost sight of him. *See* N.T. Trial, 11/13/17, at 144-146 (testimony of Officer Gartrell).

Meanwhile, York County Area Regional Police Officer Michelle Miller was in radio contact with Officer Gartrell and was conducting surveillance of the rear porch of the same residence. Officer Miller was approximately 40 feet from the porch and observed the CI walk to the rear of the residence and onto the porch. Officer Miller saw Appellant exit the rear door of the house and conduct a "transaction" with the CI, during which the CI received a plastic baggie. N.T. Trial, 11/13/17, at 161 (testimony of Officer Miller). Officer Miller took photographs of this encounter, 22 of which were shown to the jury. These photographs depicted, variously, Appellant exiting the house; Appellant and the CI talking, shaking hands, and sitting down on the porch; and the CI "holding the plastic baggie that he purchased from" Appellant. *Id.* at 165-166.

Over Appellant's objection, Officer Miller testified that she recognized Appellant "from prior encounters." N.T. Trial, 11/13/17, at 102, 161. Appellant argued that this testimony was not relevant because he had not raised any issue of identification. *Id.* at 102. The trial court responded that "[i]dentity is always an issue" and that the Commonwealth was entitled to "lay a foundation" for Officer Miller's identification of Appellant "without [Appellant] first impeaching." *Id.* at 103. However, the court agreed to limit the

testimony by requiring the Commonwealth and the witness to use the "neutral" term "encounter" to describe the prior interaction, and prohibiting reference to any prior arrest or criminal history. *Id.* at 104. At trial, Officer Miller did not further explain the "prior encounters," but stated that during the controlled buy, she saw a "distinctive physical characteristic that . . . got [her] attention," which she articulated as Appellant's "distinguishable . . . cauliflower" ears. *Id.* at 161-162, 167.

Following the controlled buy, the CI returned to Officer Gartrell and gave him the bag he had purchased from Appellant. N.T. Trial, 11/13/17, at 147. Officer Gartrell testified that the length of time between the CI exiting the car and returning with the bag was less than 5 minutes. *Id.* The parties stipulated that the State Police tested the contents of the bag and determined that it contained 6.4 grams of marijuana. *Id.* at 173.

Officer Miller did not immediately arrest Appellant because Officer Miller wanted "[t]o protect the identity of the informant." N.T. Trial, 11/13/17, at 173 (testimony of Officer Miller). Approximately 2½ months later, however, on October 17, 2016, Officer Miller met with Appellant at the York County Drug Task Force Office. Officer Miller had attempted to contact Appellant at his residence; upon learning that Appellant was not home, Officer Miller left her telephone number with Appellant's roommate, and Appellant subsequently called Officer Miller and agreed to meet with her at the York County Drug Task Force office. *Id.* at 119. Over Appellant's objection, Officer Miller testified

that during the meeting, Appellant stated "that he had been selling marijuana to his friends to support his marijuana habit." *Id.* at 108, 174.

At trial, and just prior to opening statements, Appellant argued that his statement to Officer Miller was inadmissible because it was made during plea negotiations. N.T. Trial, 11/13/17, at 108. *See also* Pa.R.E. 410(a)(4) (generally, statement made during plea discussions with prosecuting attorney is not admissible). The trial court conducted a "mini-hearing." *Id.* at 111. Appellant pointed out that he previously cooperated with Officer Miller, which resulted in the grade reduction of a then-pending criminal charge from a felony to a misdemeanor. *Id.* at 115. Appellant asserted that it was reasonable for him to have believed, when Officer Miller asked to meet with him and confronted him with the August 2, 2016 controlled drug buy, that "he could possibly . . . benefit himself" again. *Id.* at 117-120.

Officer Miller described the sequence of events during her meeting with Appellant. Officer Miller first advised Appellant of his *Miranda*[2] rights; Appellant stated his belief "that marijuana should [not] be illegal" and that he should not "be in trouble for it"; Appellant "said he sold to his friends to support his own habits"; and finally, Officer Miller suggested that Appellant cooperate with the Drug Task Force in exchange for favorable treatment. N.T. Trial, 11/13/17, at 114-115. Officer Miller further testified that she does not

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

- 4 -

decide whether to file or reduce charges, but instead "always consult[s] the District Attorney's Office." *Id.* at 114.

In deciding to allow Officer Miller's testimony, the trial court found the officer's testimony credible, emphasized that Appellant was advised of his *Miranda* rights before any mention of cooperating with the police, and stated "that police officers do not negotiate plea agreements." N.T. Trial, 11/13/17, at 122-123. The court found that the police were not engaging in any plea negotiation regardless of any prior cooperation by Appellant, and that if Appellant believed otherwise, his belief was "manifestly unreasonable." *Id.* at 123. The court thus allowed Officer Miller to testify about Appellant's statement at the York County Drug Task Force Office. *Id.* at 123-124.

The Commonwealth's case consisted of testimony from their two witnesses, Officers Gartrell and Miller. Appellant did not call any witnesses or present any evidence. After deliberating, the jury convicted Appellant of one count of PWID. On December 22, 2017, the trial court sentenced Appellant to 13 to 26 months of imprisonment. Appellant did not file a post-sentence motion, but took this timely appeal. He subsequently complied with the trial court's order to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. The trial court issued an opinion on December 5, 2018.

On appeal, Appellant presents two issues for our review:

> I. WHETHER THE HONORABLE TRIAL COURT ERRED IN PERMITTING OVER OBJECTION THE COMMONWEALTH TO

PRESENT TESTIMONY FROM OFFICER HOOVER/MILLER [*sic*[3]] THAT SHE RECOGNIZED THE APPELLANT FROM PRIOR CONTACT/ENCOUNTER WHEN THE DEFENSE HAD NOT CROSS EXAMINED OR OTHERWISE ATTACKED THE CREDIBILITY OF HER IDENTIFICATION OF THE APPELLANT.

II. WHETHER THE HONORABLE TRIAL COURT ERRED IN PERMITTING TESTIMONY OF DISCUSSIONS BETWEEN OFFICER HOOVER/MILLER AND THE APPELLANT REGARDING THE APPELLANT SELLING MARIJUANA TO OTHERS WHEN THE DISCUSSION WAS INITIATED REGARDING THE APPELLANT ASSISTING THE COMMONWEALTH IN OTHER INVESTIGATIONS, WITH SAID STATEMENTS BEING IN THE COURSE OF PLEA NEGOTIATIONS.

Appellant's Brief at 4.

Appellant first argues that the trial court erred, pursuant to Pa.R.E. 404(b), in admitting Officer Miller's testimony that she had a "prior encounter" with Appellant. *See* Pa.R.E. 404(b) (generally, evidence of other crimes or acts is not admissible to prove person's character or action in conformity therewith).

Preliminarily, we note that admissibility of evidence "is within the sound discretion of the trial court and we will not disturb an evidentiary ruling absent an abuse of that discretion." *Commonwealth v. Hicks*, 156 A.3d 1114, 1125 (Pa. 2017). Pennsylvania Rule of Evidence 404(b) states:

> *(1) Prohibited Uses.* Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

---

[3] Although Appellant references an "Officer Hoover," no such person testified at trial.

*(2) Permitted Uses.* This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, **identity**, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

Pa.R.E. 404(b)(1)-(2) (emphasis added). Our Supreme Court has explained:

Rule 404(b)(2) sets forth nine exceptions to Rule 404(b)(1)'s prohibition against the use of propensity evidence. The official Comment to Rule 404 explains that this list of exceptions is non-exhaustive. Pa.R.E. 404, *Comment*. As such, courts are not restricted to the nine exceptions expressly listed in Rule 404(b)(2) when exercising their discretion to permit the admission of evidence of prior crimes, wrongs and acts, so long as the evidence is used for purposes other than to prove character or a propensity to act in accordance with traits of character.

*Commonwealth v. Johnson*, 160 A.3d 127, 144 (Pa. 2017).

[T]he "identity" exception under Rule 404(b)(2) requires proof that the bad acts and the crime on trial share "an almost uncanny similarity in all the details," and be "so nearly identical in method as to earmark them as the handiwork of the accused . . . like a signature."

*Id.* at 143 (citations omitted).

Appellant challenges the admission of the following testimony from

Officer Miller:

[COMMONWEALTH]: Okay. Now in terms of your identification of [Appellant], did you recognize him from **prior encounters**?

[OFFICER MILLER]: Yes, I did.

Q. Are you aware of any distinctive physical characteristics that he had that got your attention?

A. Yes.

Q. What is that?

A. [Appellant] has distinguishable ears. You will be able to see in the pictures.

Q. Okay. And did you notice those characteristics during the interaction from August 2nd of 2016?

A. Yes.

N.T. Trial, 11/13/17, at 161-162 (emphasis added).

Appellant claims that the term "encounters" unfairly and "clearly implied prior police contact . . . which would lead a jury to believe that [he] had been arrested before or otherwise engaged in criminal behavior." Appellant's Brief at 8, 10. Appellant emphasizes that at the time Officer Miller testified about a prior encounter, he had not questioned the credibility of any identification, and thus identification was not at issue. We disagree with this argument.

We first note that the trial court did not base admission of the evidence — Officer Miller's testimony that recognized Appellant "from prior encounters" — on the "identity" exception in Rule 404(b)(2). Indeed, the trial court emphasized that the Commonwealth could not make any allusion that any prior encounter between Appellant and the officer was criminal in nature. The court required the Commonwealth to use the "neutral" term "encounter," reasoning that the term "encounter" is "language that is used with average citizens on the street all the time" and could have multiple connotations. N.T. Trial, 11/13/17, at 102, 104. We add that the Commonwealth did not ask any questions about the prior encounters, Officer Miller did not offer any further

explanation of the encounters, and there was no other mention of the prior encounters. The trial court opined: "To imply that simply because [Appellant] had prior encounters with the Officer that he must have engaged in prior criminal conduct would require a leap in logic that was not present in this case." Trial Court Opinion, 12/5/18, at 5.

With respect to Appellant's contention that he "had not questioned the credibility of any identification," he does not address nor dispute the trial court's observation that a defendant's identity is "always an issue" in a criminal case. *See* N.T. Trial, 11/13/17, at 103. Appellant does not point to any authority, and we have not discovered any, requiring that a defendant first raise an identification issue before the Commonwealth may present evidence establishing the defendant's identity. *See also id.* at 103 (trial court reasoning that Commonwealth may lay foundation for Appellant's identity even if Appellant did not first raise issue of identity).

Finally, we are not persuaded by Appellant's assertion that Officer Miller's testimony was unfairly prejudicial. The trial court not only directed the Commonwealth to reference the prior interaction as an "encounter," but also prohibited any reference to a prior arrest, case, or criminal history. The phrase "prior encounters" was mentioned only once, and Officer Miller did not elaborate. *See* N.T. Trial, 11/13/17, at 161. Instead, the questioning and testimony focused on Officer Miller's recognition of Appellant's distinctive ears. For these reasons, we conclude that the trial court did not abuse its discretion

in allowing Officer Miller to testify about "prior encounters" to establish Appellant's identity. *See* Pa.R.E. 404(b)(1)-(2); *Hicks*, 156 A.3d at 1125.

In his second issue, Appellant challenges the trial court's admission of Officer Miller's testimony that during the meeting with Appellant at the York County Drug Task Force Office, Appellant "stated that he had been selling marijuana to his friends to support his marijuana habit." N.T. Trial, 11/13/17, at 174.

Pennsylvania Rule of Evidence 410(b)(4) provides:

(a)  Prohibited Uses. In a civil or criminal case, evidence of the following is not admissible against the defendant who made the plea or participated in the plea discussions:

* * *

(4)  a statement made during plea discussions with an attorney for the prosecuting authority if the discussions did not result in a guilty plea or they resulted in a later withdrawn guilty plea.

Pa.R.E. 410(b)(4) (emphasis added).

Our Supreme Court stated:

Not every statement making reference to a deal or omission of jail time is necessarily a plea discussion for purposes of this rule. First, the accused must exhibit an actual subjective expectation to negotiate a plea at the time of the discussion; and second, the accused's expectation must be reasonable given the totality of the circumstances.  [We have] we observed that "the very word negotiation posits the participation of two parties and not unilateral conduct[.]"

*Commonwealth v. Burno*, 154 A.3d 764, 784 (Pa. 2017) (citations omitted).

In denying relief on this issue, the trial court emphasized that at the

- 10 -

time Appellant gave the statement — that he sold marijuana to friends to support his own marijuana use — Officer Miller had made no reference "whatsoever" to any plea negotiation. *See* N.T. Trial, 11/13/17, at 123. The trial court also found significant the fact that Appellant made the statement after he was advised of his *Miranda* rights, in which he was made "aware of the adversarial posture of the encounter." *Id.* at 122-123. Finally, as stated above, the trial court credited Officer Miller's testimony that police officers do not negotiate plea arrangements. *Id.* at 123.

Based on the foregoing, we discern no abuse of discretion by the trial court in determining that Appellant had no reasonable expectation that he and Officer Miller were engaged in plea negotiations. *See Hicks*, 156 A.3d at 1125; *Burno*, 154 A.3d at 784.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 06/11/2019

- 11 -